Donald TEZINO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–00145CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 29, 1988.

Discretionary Review Refused
April 5, 1989.

Jane Wynegar, Houston, for Tezino.

John B. Holmes, Dist. Atty., Kathy Giannaula, Asst. Dist. Atty., Harris County, for the State.

Before SMITH, DUNN and DUGGAN, JJ.

OPINION

DUGGAN, Justice.

A jury found appellant guilty of the offense of injury to a child. Following a pre-sentence investigation, the court assessed punishment at 25 years confinement. Appellant asserts nine points of error.

By his first point of error, appellant urges that the evidence is insufficient to sustain his conviction for injury to a child because there is little evidence, if any, tending to disprove his claim that the child was injured during a car accident, and no evidence showing that the child's injuries were caused by appellant's commission of a criminal act.

The offense of injury to a child occurs when a person intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger:

(1) serious bodily injury;
(2) serious physical or mental deficiency or impairment;
(3) disfigurement or deformity; or
(4) bodily injury.

Tex.Penal Code Ann. sec. 22.04(a)(1)–(4) (Vernon Supp.1988).

The standard of review for circumstantial evidence cases on appeal is the same as for direct evidence cases. *Alexander v. State,* 740 S.W.2d 749, 757 (Tex.Crim.App. 1987). In reviewing the sufficiency of the evidence to support a conviction based on circumstantial evidence, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex.Crim.App. 1983) (op. on reh'g). However, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex. Crim.App.1984). But it is not necessary in a circumstantial evidence case that every fact point directly and independently to the defendant's guilt; it is enough if the con-clusion of guilt is warranted by the combined and cumulative force of all the incriminating circumstances. *Alexander,* 740 S.W.2d at 758. Simply because the defendant presents a different version of the facts does not render the State's evidence insufficient. *Anderson v. State,* 701 S.W.2d 868, 872 (Tex.Crim.App.1985).

The complainant, Kevin Godfrey, was four-months-old at the time of the offense. His mother, Pamela Brownfield, was 18–years–old, and her boyfriend, appellant, Donald Tezino, was 17–years–old. It is undisputed that the only parties present at the time of the injury-producing events were appellant and the baby, and that Kevin was a healthy baby when he came into appellant's care shortly before his fatal injuries. Pamela testified that when appellant took Kevin with him on June 24, 1986, Kevin was in perfect physical condition, with no marks, scratches, or bruises of any kind on his body, and that he had no difficulty crying.

Approximately two or three weeks earlier, appellant asked and received Pamela's permission to take Kevin to see appellant's cousin. Instead, appellant took the child to see appellant's mother, and told her that Kevin was her grandchild. When appellant's mother phoned Pamela to confirm appellant's announcement, Pamela explained to her that appellant was not the father. When appellant returned with Kevin, the child had a cut or "busted" lip, which Pamela's mother described. When Pamela asked appellant how the baby received its injury, appellant explained that he did not know, saying that he had left Kevin with his mother while he went to play basketball.

On June 24, 1986, after spending the night with Pamela and Kevin at Pamela's sister's boyfriend's house, appellant told Pamela that he was going to visit his cousin, and asked if Kevin could ride with him. Pamela consented, and appellant took the baby with the understanding that he would be gone 30 minutes, or until approximately 1:00 p.m.

Appellant testified that he placed Kevin in the sub-compact automobile's front pas-

senger seat in an upright position, and that the infant sat there. there was no infant car seat; neither was the baby strapped in with a safety belt. Appellant testified that Kevin cried for approximately 10 minutes and that, when he stopped at a traffic stoplight, he picked the baby up and shook him for approximately two or three seconds to stop his crying. Thereafter, appellant stated, a car pulled out in front of him, causing him to hit the brakes suddenly. The cars did not collide, he testified, but his car hit the curb and bounced over the top of the curb. He testified that Kevin hit his head on the dashboard during this accident and fell to the floor of the car. The only damage to his car was bent hubcaps, he stated.

Appellant testified that after this incident, he drove to his cousin's house, found no one at home, and waited there for 20 minutes before driving to his aunt's apartment.

Nelda Malone, appellant's great-aunt, testified that appellant came to her apartment to borrow money, and that he had a baby with him. She noticed that he carried the baby braced against his shoulder so that the baby's face was away from her view. As Malone and appellant talked, she noticed an unusual sound to the infant's breathing, and asked to see the baby. She observed that the baby's eyes were swollen shut, its cheeks were bruised, and that there was blood on the inside of the baby's mouth. The child was not alert and his breathing sounded "funny." Malone testified that appellant told her that the baby was in its injured condition when he got the child at his girlfriend's. Ms. Malone advised appellant to take the baby to the hospital or a doctor. The apartment maintenance man, Mickey Dwayne Gray, testified that Kevin's eyes were swollen shut and his face was discolored along the cheeks and under the eyes. He also told appellant to take the baby to the hospital. Both witnesses testified that, based on appellant's response to their urging, they believed that he would seek prompt medical attention for the child.

However, appellant did not take Kevin to the hospital or to a doctor, but to Pamela's house, where he left him with her 10–year–old sister, despite the fact that he knew Pamela was waiting for him at her other sister's, where he had left her. Appellant never said that anything was wrong with the baby, or that it was injured. To the contrary, he told the 10–year–old sister that the baby was sleeping. After leaving the baby, appellant drove to Orange, Texas, where he stayed overnight without contacting Pamela.

Around 3 p.m., Pamela's sister noticed Kevin's condition and called her father at work; he testified that when he arrived at the house to aid the child, Kevin "appeared real dark around the eyes and bruised in the face and he appeared like he was trying to cry but couldn't and was making a real odd noise in the face." At approximately 5 p.m., Kevin arrived at Ben Taub Hospital emergency room for treatment.

Dr. Stephen Welty, chief resident at Ben Taub Hospital when Kevin was admitted, testified that Kevin arrived at the hospital with extreme intercranial pressure, retinal hemorrhaging, and swelling and hemorrhaging in the forehead region, and that he was in a coma. He testified that the cause of death on July 2, 1986, eight days later, was intercranial hypertension, or increased swelling of the intercranial contents.

Dr. Welty testified that Kevin's injuries were consistent with both shaking injury and blunt trauma, and that all of his injuries could have been caused by shaking, except the swelling and bruising in the forehead area. The bruises could have been caused at any time from several days before examination up until a few minutes before. He described blunt trauma as a force applied to the head, which could be produced by striking the infant in the face with a fist, as well as by the child's falling from a car seat upon a quick stop and then hitting a hard object.

Appellant cites *Johnson v. State*, 673 S.W.2d 190 (Tex.Crim.App.1984), as authority analogous and applicable to his situation. In *Johnson*, the child victim was crushed when an automobile, which the

defendant said was jacked up for repairs, fell on him. The *Johnson* court held that (1) the defendant's presence at the scene, plus (2) the insufficiency of the circumstantial evidence to show the falsity of the defendant's explanation of what occurred, was insufficient to support the conviction.

■ The facts in our case are distinguishable, particularly in the matter of the time differential in getting the child to medical assistance. In *Johnson,* the defendant and a neighbor rushed the injured child to the hospital shortly after the defendant's car fell on the child. *Id.* at 194. In our case, the evidence shows that appellant prolonged the time before Kevin received medical attention and concealed the baby's injured condition, even after his aunt and another urged him to take the child immediately for hospital or doctor's care.

■ The State has not relied solely upon evidence of appellant's presence with the child at the time of the injuries to establish guilt. However, the fact that appellant was alone with the victim when the injuries were received, can be, in combination with other evidence, highly probative of guilt. *Green v. State,* 736 S.W.2d 253, 254–55 (Tex.App.—Beaumont 1987, no pet.); *Martinez v. State,* 723 S.W.2d 264, 264–65 (Tex.App.—San Antonio 1986, pet. ref'd); *Short v. State,* 658 S.W.2d 250, 255–56 (Tex.App.—Houston [1st Dist.] 1983), *aff'd,* 671 S.W.2d 888 (Tex.Crim.App.1984).

Numerous additional circumstances, in addition to appellant's presence, cumulatively support the factfinder's finding of guilt:

■ First, the record included evidence of the incident of the "busted lip" to the baby several weeks before the fatal injuries, when appellant took the child on another trip. Evidence of prior abuse, in combination with other evidence, can render circumstantial evidence sufficient. *Scott v. State,* 732 S.W.2d 354, 359 (Tex.Crim.App.1987).

Second, appellant admitted that he shook the crying four-month-old baby, to get him to stop crying.

■ Third, the evidence showed that appellant failed to seek medical help for the baby after the injuries were inflicted, after being strongly urged by two adults to do so, and after assuring them that he would. Failure to render aid known to be needed supports an inference that injuries were intentionally, not accidentally, inflicted. *Cook v. State,* 388 S.W.2d 707, 708–09 (Tex. Crim.App.1965); (where the defendant's abandonment of a dying victim was held to support a finding of intent to kill).

■ Fourth, evidence showed that appellant concealed Kevin's injuries, when he left him with the 10–year–old aunt, by covering him with a blanket and saying nothing about the injuries, after others had earlier brought the obvious injuries to appellant's attention. Concealment of pertinent evidence supports an inference of guilty knowledge by the appellant as to such evidence. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex.Crim.App.1987).

■ Fifth, evidence showed that appellant fled to Orange, Texas, and remained overnight, after initially telling Kevin's mother that he would return with the baby within 30 minutes. While flight alone will not support a finding of guilt, it is a circumstance from which an inference of guilt may be drawn. *Harris v. State,* 645 S.W.2d 447, 458 (Tex.Crim.App.1983).

■ Sixth, the jury could consider the implausibility of appellant's testimony to support his account that Kevin's injuries occurred when the child fell forward against a dashboard, e.g., testimony that the four-month-old baby sat upright in the front passenger seat. Incredible testimony will not support a reasonable hypothesis other than guilt. *Mills v. State,* 742 S.W.2d 831, 834 (Tex.App.—Dallas 1987, no pet.).

■ Seventh, testimony showed that appellant failed to tell his aunt that Kevin received his injuries in a car accident, when she specifically asked how the baby was injured. Prior silence as to a fact later testified to, when such silence occurs under

circumstances in which one would be expected to speak, constitutes strong impeachment evidence. *Franklin v. State*, 606 S.W.2d 818, 848 (Tex.Crim.App.1979) (op. on reh'g).

Viewed in the light most favorable to the verdict, the combined and cumulative force of all the incriminating circumstances provides sufficient evidence to support the jury's finding of guilt.

The appellant's explanation for the deceased's injuries did not render the State's case insufficient as a matter of law because it was the jury's prerogative to reject appellant's explanation.

Appellant's first point of error is overruled.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published.

The judgment of the trial court is affirmed.