Affirmed and Memorandum Opinion filed October 6, 2005









Affirmed and Memorandum Opinion filed October 6, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00377-CR

____________

 

TRENTON LE TROY
JACKSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 981,891

 



 

M E M O R A N D U M   O P I N I O N

Appellant Trenton Le Troy Jackson was
convicted of murdering his three-year-old daughter and was sentenced to life
imprisonment.  In two issues, he
challenges the legal and factual sufficiency of the evidence supporting his
conviction.  We affirm.

                                                  Background








Appellant lived in
an apartment with the mother of several of his children, along with the
children, his girlfriend=s mother, and the mother=s boyfriend.  Appellant did not live with T.J., his
three-year-old daughter by another woman. 
T.J. did not know her father well, as he had been in and out of jail for
most of her life.  Appellant picked T.J.
up for a visit on the night of Wednesday, April 2, 2003.  On Saturday, April 5, at around 6:00 p.m.,
T.J. passed out and was taken by ambulance to a trauma hospital after
responding paramedics found her showing signs of severe trauma from a high
impact injury to the head or spine.  It
was later determined that T.J. had suffered at least six blunt force impacts to
the head, resulting in a subdural hematoma, which is a collection of blood
between the skull and the tissue surrounding the brain.  T.J. also had extensive bruising all over her
body, including her head, neck, arms, lower abdomen, buttocks, and legs.  A treating physician testified that T.J. had
no unbruised skin from her waist to the middle of her thighs and that she Ahad never seen
someone who had been this badly bruised on her buttocks.@  T.J. died four days later.  The medical examiner concluded that T.J. had
been Abeaten to death,@ specifically from
the blunt force injuries to her head. 
The medical evidence could not pinpoint the exact time of T.J.=s head injuries,
but it was sometime within the seven hours before the ambulance arrived at
around 6:30 p.m.

When questioned by the police about T.J.=s injuries shortly
after the ambulance left, appellant admitted she was physically fine when he
picked her up on Wednesday and claimed to have no idea how she sustained such
extensive bruising or how her head was injured. 
Appellant stated that he had spanked T.J. with a belt two times, once
Friday and once Saturday, with each spanking consisting of about fifteen
strikes.  He explained that T.J. did not
like him, was afraid of him, and constantly complained that she wanted to go
home.  Appellant claimed that on the two
occasions he spanked her, T.J. had attempted to get appellant to take her home
by urinating and/or defecating on herself.








Appellant told police and later testified
at trial that during the visit, he spanked T.J. only twice with a belt andAdidn=t pop her hard,@ but the jury
heard evidence to the contrary.  Kenneth
Newman, who was appellant=s girlfriend=s mother=s boyfriend and
was at the apartment during T.J.=s entire visit,
testified that appellant spanked T.J. with a belt in a bedroom with the door
closed two or three times per day each day T.J. was there.  Newman explained that the situation was Aworse@ on Saturday
because appellant was angrier and more frustrated with T.J., beat her longer
and harder, and afterward emerged from the bedroom sweating.  A appellant returned to the room a short time
later, found T.J. passed out with her eyes rolling back in her head, and had
someone call 911.

Though appellant initially offered no
explanation for T.J.=s head injuries when questioned by the
police, he presented two theories at trial. 
First, he speculated that T.J. might have hurt herself by banging her
head on a bunk bed ladder or against the wall. 
Three other witnesses also claimed that T.J. had hit her head on the
bunk bed ladder either Thursday or Friday. 
Second, appellant claims that he saw T.J.=s mother drop T.J.
on her head earlier in the day on Wednesday before he brought her to the
apartment that night.  However, the
medical evidence established that T.J.=s head injuries
came from Asignificant blunt force@ equivalent to
that of an automobile accident or a fall down a flight of stairs, that they
could not have been self-inflicted, and that they occurred on Saturday, not
before.

Appellant was charged with felony murder
based on the underlying felony of intentionally or knowingly causing bodily
injury to a child fourteen years of age or younger.  See Tex.
Pen. Code Ann. ' 22.04(a)(1), (e) (Vernon 2003).  The jury convicted appellant, and this appeal
followed.

                                           Standard of Review








In evaluating a legal‑sufficiency
claim attacking a jury=s finding of guilt, we view the evidence
in the light most favorable to the verdict. 
Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000).  We do not ask whether we believe
the evidence at trial established guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318B19 (1979).  Rather, we determine only whether a rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Cardenas v. State,
30 S.W.3d 384, 389 (Tex. Crim. App. 2000). 
In our review, we accord great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996) (quoting Jackson, 443 U.S. at 319).  We presume that any conflicting inferences
from the evidence were resolved by the jury in favor of the prosecution, and we
defer to that resolution.  Id. at
133 n.13.

In conducting a factual‑sufficiency
review of the jury=s determination, we do not view the
evidence Ain the light most favorable to the
prosecution.@  Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Instead, we view the evidence in a neutral
light and inquire whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  We may find the verdict is factually
insufficient in two ways.  First, when
considered by itself, the evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict, the contrary
evidence may be strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met.  Id.
at 484B85.  Our evaluation should not intrude upon the
fact‑finder=s role as the sole judge of the weight and
credibility given to any witness=s testimony.  Cain, 958 S.W.2d at 407.

                                                      Analysis

In his two issues, appellant argues that
although he admitted spanking T.J., the evidence is legally and factually
insufficient to show that he committed the act that caused T.J.=s death, namely,
injuring her head.  Appellant asserts
that because there is no direct evidence that he caused T.J.=s head injuries,
his conviction is based on Aspeculation alone.@  Appellant seems to suggest that direct
evidence is necessary to sustain a conviction. 
However, circumstantial evidence alone can be sufficient to support a
jury=s verdict.  Kutzner v. State, 994 S.W.2d 180, 184
(Tex. Crim. App. 1999).  When reviewing a
case comprised wholly of circumstantial evidence, the standard of review is the
same as in cases containing direct evidence. 
Id.  








The circumstantial evidence in this case
clearly supports the jury=s verdict. 
The jury heard evidence that appellant beat T.J. with a belt two or
three times per day during her visit, resulting in extensive bruising all over
her body.  Though the bruises did not
cause T.J.=s death, the jury could properly consider
other evidence of abuse in deciding whether appellant also caused T.J.=s fatal head
injuries.  See Canaday v. State,
853 S.W.2d 810, 813 (Tex. App.CBeaumont 1993, no
pet.); Tezino v. State, 765 S.W.2d 482, 485 (Tex. App.CHouston [1st
Dist.] 1988, pet. ref=d). 
Appellant initially told the police that he had no explanation for T.J.=s head injuries,
but by the time of trial, he had developed several theories that were inconsistent
with the medical evidence.  A jury can
view such changes in the defendant=s story as
evidence of guilt.  See Kemmerer v.
State, 113 S.W.3d 513, 516 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d). 
The fact that appellant could account for only some of T.J.=s injuries and
that his explanations of the source of those injuries were inconsistent with
the medical evidence are further circumstances supporting the verdict.  See Goodman v. State, No.
14-97-01027-CR, 2002 WL 1478594, at *3 (Tex. App.CHouston [14th
Dist.] June 27, 2002, no pet.) (not designated for publication); Sparks v.
State, 68 S.W.3d 6, 10 (Tex. App.CDallas 2001, pet.
ref=d); Tezino,
765 S.W.2d at 485.








Newman testified that appellant was alone
with T.J. during the beatings, and there was no evidence to suggest that anyone
other than appellant beat or otherwise injured T.J. during her visit.  This is also appropriate circumstantial
evidence for the jury to have considered. 
See Goodman, 2002 WL 1478594, at *3; Elledge v. State, 890
S.W.2d 843, 847 (Tex. App.CAustin 1994, pet.
ref=d); Battle v.
State, 681 S.W.2d 104, 106B07 (Tex. App.CHouston [14th
Dist.] 1984, pet. ref=d). 
The medical evidence established that T.J. was beaten to death and that
the fatal head injuries were inflicted on Saturday, the day witness testimony
established that appellant came out sweating from the bedroom after beating
T.J. longer and harder than he had before. 
The cumulative force of all these incriminating circumstances provides
legally and factually sufficient evidence to support the jury=s verdict.  See Barnes v. State, 876 S.W.2d 316,
321 (Tex. Crim. App. 1994); Tezino, 765 S.W.2d at 486.  We overrule both of appellant=s issues and
affirm the trial court=s judgment.

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed October 6, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).