In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-087 CR


____________________



ERIC WADE LOWE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B-060494-R






 MEMORANDUM OPINION 


 A jury convicted Eric Wade Lowe on two first degree felony counts of intentionally
or knowingly causing serious bodily injury to a child. (1) On each conviction, the jury assessed
punishment at sixty years' confinement in the Texas Department of Criminal Justice -
Institutional Division and a ten thousand dollar fine. The jury also answered a special issue
finding that Lowe, in the commission of each offense, used his hands as deadly weapons. 
The trial court subsequently entered a judgment and sentenced Lowe to serve the sixty-year
sentences concurrently. 

 Lowe raises two issues on appeal. He challenges the legal and factual sufficiency of
the evidence to support his convictions. He also asserts that the trial court abused its
discretion when it denied his motion for continuance. We affirm.

Background

 Lowe allegedly injured the child on or about June 20, 2006. At that time, Lowe and
Amber Martin, the child's mother, lived together in Orange County, Texas. When the
injuries occurred, the child was approximately seven months old. 

 The child's injuries were discovered by Martin's mother when Martin took the child
to her mother's home. On July 8, 2006, Martin's mother noticed that the child had a bruise
across his left cheek and above his left eye. Martin's mother also noticed that the child's
thigh felt "tight," and she thought he might have a dislocated hip. Martin and her mother
took the child to the emergency room. A nurse at the emergency room reported the child's
injuries to the police and to Child Protective Services.

 The indictment alleged that the child suffered serious injuries in two ways,
specifically: (1) when his thighs were grabbed and his legs were pulled, and (2) when he was
struck on his back. The child's emergency room x-rays showed a spiral fracture of the left
femur. A CT scan of the child's abdomen, taken on July 9, 2006, demonstrated that the child
had suffered a deep muscle hematoma. The hospital subsequently transferred the child to a
hospital in Galveston where he was seen by Dr. James Lukefahr, a board-certified
pediatrician.Standard of Review

 In issue one, Lowe challenges the sufficiency of the evidence supporting his two
convictions. When reviewing questions of legal sufficiency, we view the evidence in the
light most favorable to the verdict and determine whether any rational fact-finder could have
found the essential elements of the offense beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Salinas v. State, 163
S.W.3d 734, 737 (Tex. Crim. App. 2005). In a factual sufficiency review, we consider all
of the evidence in a neutral light and reverse only if we conclude, from some objective basis
in the record, that the great weight and preponderance of evidence contradicts the jury's
verdict. See Watson v. State, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). We cannot
determine that a finding is "clearly wrong" or "manifestly unjust" simply because we might
have found otherwise had we been the fact-finder. See id. at 417. In examining a factual
sufficiency challenge, we defer to the fact-finder's determination on the credibility of the
witnesses it heard testify. See Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App.
2003).




Sufficiency of the Evidence

 The jury found Lowe guilty of intentionally or knowingly injuring a child. (2) See Tex.
Pen. Code Ann. § 22.04(a) (Vernon Supp. 2008). Under this statute, the State must prove
the defendant knew that his conduct would result in the child's serious bodily injury. 
Haggins v. State, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990) ("[I]njury to a child is a
result-oriented crime[.]"); Alvarado v. State, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)
("What matters is that the conduct (whatever it may be) is done with the required culpability
to effect the result the Legislature has specified."). Under the Penal Code, "[a] person acts
knowingly, or with knowledge, with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result." Tex. Pen. Code Ann. § 6.03(b)
(Vernon 2003).

 Count one of the indictment alleged that Lowe, intentionally or knowingly, caused
serious bodily injury to the child by grabbing the child's thighs and pulling the child's legs
with his hand. Count two alleged that Lowe, intentionally or knowingly, caused serious
bodily injury to the child by hitting the child on the back with his hand.

 First, we address the sufficiency of the evidence to prove that the child's injuries were
serious. Dr. Lukefahr addressed the seriousness of the child's injuries during his testimony. 
After identifying the definition of "serious bodily injury," (3) Dr. Lukefahr classified the child's
femur fracture and his deep tissue hematoma as serious bodily injuries. In his brief, Lowe
does not argue that the child's injuries were not serious. We find the evidence legally and
factually sufficient to prove these two injuries were serious as defined by the Penal Code.

 Next, we address whether the evidence was sufficient to prove that Lowe knowingly
injured the child. In his brief, Lowe concedes that his conduct was reckless, but contends
that he "did not intend for the child to sustain the injuries he received." According to Lowe,
he "was spanking" the child. Lowe also contends that the evidence did not establish that he
caused the child's injuries and argues that Martin conceded that she possibly caused the
child's injuries. Thus, Lowe challenges whether the evidence sufficiently established that
he acted with the mental state required to support a conviction under Section 22.04 of the
Penal Code, or that he caused the child's leg and abdominal injuries.

 The evidence at trial connected Lowe to having caused the child's injuries. Martin's
step-father provided testimony pertinent to the child's leg injury. He testified that while
helping Lowe move furniture from Lowe's house, Lowe learned that the child had been taken
to the hospital. According to Martin's step-father, when he asked Lowe what had happened
to the child, Lowe stated:

 that if I wanted to know what happened to the baby's leg, that it
got hurt when he was taking him out of his crib, but he didn't
feel like he needed to go to the doctor, and I told him that my
wife felt like the child needed to see a doctor, and we were
going to let the doctor decide.

 

In addition, the jury heard testimony about the history of the child's injury provided by
Martin to the hospital's emergency room nurse. The emergency room nurse testified that
Martin said that her "fiancé had pulled [the child] loose that morning, and he heard a pop,
and [the child] hadn't moved his leg since that time." Martin's testimony at trial also
supports the conclusion that Lowe caused the child's leg injury. Martin testified that when
the child's leg became caught in the bed, she and Lowe heard a pop while attempting to
maneuver the child's leg out. According to Martin, she and Lowe were equally responsible
for the child's injuries. Police detective Chris Humble, who interviewed Lowe, also testified
about the circumstances that led to the child's leg injury. According to Detective Humble,
during an interview on July 10, 2006, Lowe stated that when the child's leg got hung up in
the baby bed, "they would have to go out there and remove the leg, and how this happened
continuously, happened more than once[.]" According to Detective Humble, both Lowe and
Martin attributed the child's broken leg to "having his leg hung up in the bed[.]"

 We conclude that the evidence was factually and legally sufficient to support the
jury's conclusion that Lowe caused the child's leg injury. To the extent that issue one
challenges the sufficiency of the evidence of Lowe's conviction on count one of the
indictment, issue one is overruled. 

 There was also testimony to link Lowe with causing the child's abdominal injury. In
his written statement, Lowe admitted that both he and Martin spanked the child, on occasion
"harder than we should have and probably hit him on his back instead of his butt." 
According to Dr. Lukefahr, the force necessary to "cause a blood clot deep in the middle of
that muscle, which is one of the body's largest muscles, really would have taken a lot of
impact." According to Martin, because she was afraid that Lowe would hurt the child, she
would enter the room while he was spanking the child after she heard about ten swats. She
further testified that they were spanking the child five or six times every day, and that Lowe
was beginning to become outraged with the child. While Dr. Lukefahr suggested that blunt
force trauma with a fist or hard object would be needed to produce an abdominal hematoma,
he recognized that sufficient trauma could possibly be inflicted by the hand or by a spatula. 
Martin testified that on one occasion, she saw Lowe spanking the child in a hard forceful
manner, and on others went into the room while Lowe spanked the child because: "I was
afraid that he would hurt him." Martin also testified that she had agreed to allow Lowe to
spank the child, and later decided they would use a spatula "to take some of the force off." 
According to Martin, the spankings began when the child was six months old.

 We find the evidence legally and factually sufficient to establish that Lowe caused the
child's abdominal injury. To the extent Lowe's issue challenges the sufficiency of the
evidence that he caused the child's abdominal injury, his issue is overruled.

 In his arguments under issue one, Lowe also points to Martin's testimony that she may
have broken the child's leg as creating doubt about the validity of the jury's verdict. 
However, Martin also testified that both she and Lowe were responsible for the child's
injuries and that she could not specifically say that she had caused the child's leg injury.

 While there is inconsistent evidence about Lowe's and Martin's respective roles in
causing the child's injuries, juries resolve inconsistencies in evidence. As the trier of fact,
the jury "is the sole judge of the credibility of the witnesses and of the strength of the
evidence." Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact
may choose to believe or disbelieve any portion of a witness's testimony. Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). It is within the sole province of the jury
to reconcile conflicts, contradictions, and inconsistencies in the evidence. Cooks v. State,
844 S.W.2d 697, 708 (Tex. Crim. App. 1992). Here, the jury heard and considered the
inconsistencies in the testimony and, based on the evidence before it, determined that Lowe
was guilty of causing the child's abdominal and leg injuries. 

 Lowe also challenges whether the evidence sufficiently proved that he was aware his
conduct was reasonably certain to cause the result. To constitute a first degree felony of
injury to a child, the conduct must be committed intentionally or knowingly. Tex. Pen.
Code Ann. § 22.04(e) (Vernon Supp. 2008). A defendant is guilty of "knowingly" causing
injury to a child when he is aware, with reasonable certainty, that the injury would not result
"but for" his conduct. Tex. Pen. Code Ann. §§ 6.03(b); 6.04(a) (Vernon 2003).

 Lowe argues that he and Martin were "very young and did not know how to take
proper care of a child." He further contends that the child's injuries occurred while he was
disciplining the child.

 Lowe did not testify at trial. Therefore, the jury's assessment of Lowe's mental state
when he caused the injuries was necessarily based on the testimony of other witnesses. In
this case, there was evidence that the child suffered other intentionally inflicted injuries to
other parts of his body. For instance, when initially treated at the hospital, the child had
multiple bruises to his face and a wrist fracture. Dr. Lukefahr testified that these injuries
were most likely intentional, and also testified that it was unlikely that the child's fractured
femur was accidental. We previously noted Dr. Lukefahr's testimony about the significant
force required to produce the abdominal injury suffered by the child. 

 Under the Penal Code, a person operating with a parent's consent may use non-deadly
force against a child under eighteen years of age "when and to the degree the actor
reasonably believes the force is necessary to discipline the child or to safeguard or promote
his welfare." Tex. Pen. Code Ann. § 9.61 (Vernon 2003). A "'reasonable belief' means a
belief that would be held by an ordinary and prudent man in the same circumstances as the
actor." Tex. Pen. Code Ann. § 1.07(42) (Vernon Supp. 2007). 

 In assessing Lowe's intent when he acted to discipline the child, the jury was entitled
to consider the child's tender age, the frequency and circumstances that caused Lowe to
punish the child, and the severity of the child's spankings as described by Martin. The jury
also heard medical testimony about the amount of force required to produce the child's
respective injuries. The jury could also consider the fact that Lowe and Martin attempted to
avoid allowing contact between Martin's mother and the child in an effort to conceal the
child's injuries. See Tezino v. State, 765 S.W.2d 482, 485 (Tex. App.-Houston [1st Dist.]
1988, pet. ref'd) (finding that concealment creates reasonable inference of guilty knowledge). 
Finally, in determining whether Lowe intended to harm the child, the jury was also entitled
to consider testimony that showed his other abusive conduct toward the child. See id. 

 Juries may infer intent from acts in evidence that they believe demonstrate the
existence of the required intent. Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App.
2003). Given all of the testimony concerning the circumstances of the injuries, including the
child's age, the fact the child had multiple injuries, and the testimony about the forces
required to produce the child's leg and abdominal injuries, we conclude that it was
reasonable for the jury to find that Lowe knowingly injured the child. The jury was further
entitled to reject Lowe's argument that his conduct was only reckless and that his discipline
had been objectively reasonable. Viewing the evidence in the light most favorable to the
jury's verdict, we find a rational trier of fact could have found all of the elements of the
offense of injury to a child proven beyond a reasonable doubt. See Jackson, 443 U.S. at 319. 
Considering all of the evidence in a neutral light, we reject Lowe's argument that the
evidence supporting his two convictions resulted in a clearly wrong or manifestly unjust jury
verdict. See Watson, 204 S.W.3d at 417. Having addressed all of Lowe's arguments that
attack the sufficiency of the evidence supporting his conviction, we overrule issue one.

Continuance


 In his second issue, Lowe asserts the trial court abused its discretion in failing to grant
his motion for continuance. Lowe argues that because the trial court denied his request to
give his expert additional time to review various records, he was "forced to go to trial
without his attorney being fully prepared. It forced him to be unable to defend himself." 
Thus, Lowe asserts that had the court granted a continuance, his attorney would not have
been "forced to go to trial without the benefit of an adequate consultation" with his court-appointed expert, Dr. Giradet. 

 The record reflects that the State appointed trial counsel to represent Lowe on
September 21, 2006. On October 11, 2006, the trial court set a trial date of January 29, 2007. 
On December 14, 2006, Lowe's counsel filed a motion and requested the court to appoint a
medical expert, but the motion did not name any particular individual. On that same date,
Lowe filed a motion requesting that the trial court conduct an in camera inspection of the
records created by Child Protective Services during its investigation of the child's injuries. 
On January 10, 2007, Lowe filed his first motion to continue based upon the State's
notification of its intent to seek an affirmative finding that Lowe used deadly weapons during
the commission of the charged offenses. On January 11, 2007, during a hearing on the
motion to conduct the in camera inspection, Lowe's attorney advised the court that she had
arranged for Dr. Giradet to review the child's records. The trial court immediately approved
Lowe's request to appoint Dr. Giradet as his expert. On January 11, the trial court also
denied Lowe's first request for a continuance.

 On January 24, 2007, Lowe filed a second motion to continue, asserting that Dr.
Giradet needed additional time to evaluate the child's medical records. In Lowe's motion,
his attorney acknowledged having received "a complete set of the victim's medical records"
on January 17, 2007, and stated that she forwarded them to Dr. Giradet on January 19. 
Lowe's second motion also states that Dr. Giradet, on January 23, 2007, advised her that it
would take at least seven to ten days to review and evaluate the records.

 The trial court conducted a hearing on Lowe's second motion for continuance on
Thursday, January 25, 2007. During the hearing, the State informed the court that it intended
to call Dr. Lukefahr on January 30, which was on the second day of trial. Based on the trial
court's comments at the hearing, it is apparent that the trial court expected Dr. Giradet to
prioritize the review of the medical records in light of the previously scheduled trial date of
January 29; nevertheless, the trial court stated that in the alternative, Lowe's attorney could
make other arrangements with another expert. The trial court then orally denied Lowe's
second motion to continue.

 In criminal cases, the Code of Criminal Procedure governs motions to continue. 
Under the Code, criminal actions may be continued "upon sufficient cause shown; which
cause shall be fully set forth in the motion." Tex. Code Crim. Proc. Ann. art. 29.03
(Vernon 2006). Because decisions on motions to continue rest within the trial court's
discretion, on appeal, a defendant must demonstrate that his "defense was prejudiced by
counsel not having more time to prepare for trial." Hernandez v. State, 643 S.W.2d 397, 400
(Tex. Crim. App. 1982). 

 As Lowe argues that a consultation with an expert would have allowed his lawyer to
"understand" the medical records, we address the medical testimony presented at trial. 
During Lowe's trial, Dr. Lukefahr was the sole physician called who addressed whether the
child's injuries were serious and whether they were accidental or intentional. When the State
called Dr. Lukefahr to testify as a witness on Tuesday, January 30, 2007, Lowe's attorney did
not re-urge his motion to continue, nor advise the trial court that Dr. Giradet had refused to
rearrange her schedule to accommodate the trial setting. Additionally, Lowe's attorney did
not tell the trial court that she could not capably cross-examine Dr. Lukefahr, or that she had
not arranged for another expert to provide her a consultation.

 The record does not show that Lowe's counsel was unprepared to examine Dr.
Lukefahr; instead, during her cross-examination, Lowe's attorney gained several concessions
from Dr. Lukefahr, including the generally low level of risk of serious injury from being
struck on the back, the existence of other plausible explanations that might explain how the
child injured his leg, the absence of any injuries to the child's vital organs, and his testimony
that he could not determine who had caused the child's injuries.

 After Lowe's counsel completed her examination of her last witness, the trial judge
inquired: "Does the defense have any other evidence?" Counsel responded, "The defense
rests, Your Honor." At the conclusion of trial, Lowe's attorney made no complaint that she
had not been able to sufficiently educate herself to understand the pertinent medical records. 

 After the jury returned its verdict, Lowe filed a motion for new trial. In his motion,
Lowe requested a new trial in the interest of justice. Once again, Lowe did not allege that
his counsel did not receive a medical consult prior to the trial.

 Having thoroughly reviewed the record, we conclude that it fails to reflect that Lowe's
attorney was unable to obtain a medical consultation. Further, nothing in the record reflects
that, after the trial started, Lowe's attorney did not have the assistance of an expert's input
to assist in her preparation to cross-examine the State's witnesses. Moreover, the record does
not reflect that Lowe's counsel was unprepared or ineffective in her efforts to cross-examine
witnesses on the medical aspects of the matters at issue. Finally, the record does not
demonstrate that Dr. Giradet, or another medical expert, would have provided information
to contradict the testimony of Dr. Lukefahr that the child's leg and abdominal injuries were
"serious bodily injuries" as defined by the Texas Penal Code. See Leach v. State, 548
S.W.2d 383, 385 (Tex. Crim. App. 1977) (holding no reversible error when the record did
not reflect that the tests of a substance by defendant's chemist was different from those of
the State's chemist). 

 We hold that Lowe has not met his burden to demonstrate that good cause justified
a continuance or that he was prejudiced by the trial court's denial of his motion. We overrule
issue two. The judgment of the trial court is affirmed. 

 AFFIRMED.



 ___________________________

 HOLLIS HORTON

 Justice 



Submitted on February 21, 2008 

Opinion Delivered October 1, 2008

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ. 

1. See Tex. Pen. Code Ann. § 22.04(a)(1), (e) (Vernon Supp. 2008). 
2. "Knowingly" committing the charged offense requires a lower standard of intent
than "intentionally" committing the charged offense. See Tex. Pen. Code Ann. § 6.03(a),
(b) (Vernon 2003); § 22.04(a). Because the jury found Lowe guilty of either intentionally
or knowingly injuring the child, it is unnecessary to address whether sufficient evidence
establishes both an intentional and a knowing injury. Thus, we address whether the
evidence established the lower standard of a knowing injury to the child. 
3. "'Serious bodily injury' means bodily injury that creates a substantial risk of death
or that causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ." Tex. Pen. Code Ann. § 1.07(a)(46)
(Vernon Supp. 2007).