Affirmed and Memorandum Opinion filed December 9, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00359-CR



 

MARCHRISTIAN JENON THOMAS, Appellant

V.

STATE OF TEXAS, Appellee

 



On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 1127744



 

MEMORANDUM OPINION

Appellant, Marchristian Jenon Thomas, was convicted
of capital murder and mandatorily sentenced to life imprisonment without
possibility of parole.  See Tex. Penal Code Ann. § 12.31(a)(2) (West Supp.
2009).  He challenges the legal and factual sufficiency of the evidence
supporting his conviction.  Because the dispositive issues are clearly settled
in law, we issue this memorandum opinion.
 See Tex. R. App. P. 47.4.  We affirm.  

Background

At
approximately 3:00 a.m. on August 2, 2007, a woman was driving on a desolate
Houston street when she noticed a man “hanging out” of a parked taxi cab.  The
woman called for emergency assistance, and law enforcement and paramedics
arrived shortly thereafter.  Officer Paul G. Peters discovered the taxi driver,
John West, lying on the ground with his feet still inside the taxi cab.  West
was unable to speak, had blood in his mouth, and was laboring to breathe.  He
also appeared to have a bullet exit wound above his left eye.  Blood was found
inside and on the outside of the cab.  It appeared to Officer Peters that
someone had rummaged through the center console and glove compartment of the
taxi cab.  West was transported to a hospital but died later that morning.  The
medical examiner testified that West had been shot twice in the back of his
head.  

Homicide
detectives contacted West’s taxi-cab company and were informed that his cab was
equipped with a camera that automatically photographed the interior of the cab
whenever a door opened or closed, the meter was turned on or off, or the
interior light was activated.  The taxi-cab company also had recordings of the phone
calls made by the person who requested the taxi service to which West responded. 


From
midnight until 1:30 a.m., six calls were made requesting taxi service to 1500
or 1512 Demaree for “Michael.”  Police discovered the phone calls were placed
from a house at 1510 Demaree, a location within one-half mile from where the
cab was found.  The detectives arrived at 1510 Demaree and spoke with appellant’s
grandmother who informed them appellant was one of the people living at that
location but was not presently there.  The detectives requested that appellant
call them when he returned.  The detectives also discovered that “1512 Demaree”
did not exist.

Later
that day, appellant left the detectives a voicemail message.  Before meeting
with appellant, the detectives reviewed photographs taken from the cab camera. 
The photographs confirmed the fact that appellant entered the cab and sat in
the backseat on the passenger side.  A second person, Patrick Esters, entered
the cab and sat behind the driver seat.  Appellant and Esters wore hooded
sweatshirts but were not wearing the hoods when they entered the cab. 
Photographs taken a few minutes later showed appellant leaning from the
backseat into the front part of the cab and across West’s body.  It is unclear
what appellant was doing as he leaned over West.  Further, appellant was now
wearing the hood to his sweatshirt.

At this
point, the detectives acquired an arrest warrant for appellant.  They returned
to 1510 Demaree and met with appellant.  Appellant voluntarily accompanied the
detectives to their office where he was advised of his rights and interviewed.  Appellant
was not told about the photographs or the arrest warrant.  At the beginning of
the interview, appellant misspelled his first name and erroneously stated he
did not have a middle name and his last name was “Thompson.”  He initially told
detectives that around 8:15 p.m. on August 1, 2010, he allowed other persons to
use his phone and then left and spent the rest of the night with his cousin. 
He also stated that he had not been in a taxi cab for eight years. Nevertheless,
when confronted with the photographs, he admitted he was in a cab that
morning.  He then stated “Michael Kyle” asked to use his phone and called the
cab.  However, after being informed the detectives possessed recordings of the
calls, appellant admitted he was the caller.  Appellant stated he never pulled
the hood over his head, but when shown the photograph in which he was wearing
the hood, he explained that “Michael” told him to put it on.  Appellant told
detectives that he discarded his sweatshirt into a sewer near where he lived.  The
sweatshirt was later found in the sewer, submerged in dirty water.  Appellant
repeatedly denied that he shot West or that he knew his companion intended to
shoot West, and stated he was frightened after the shooting.  He told
detectives he did not seek emergency assistance for West because he did not
want to “get in trouble.”  Appellant stated that before the cab arrived, “Michael”
said they were going to “get some money.”  Appellant also “admitted” the person
who accompanied him was not “Michael Kyle” but “Cardell Kyle”; appellant never informed
detectives that Patrick Esters was the other man.  After the interview,
appellant was arrested.  Esters was later questioned and arrested.  

 

Appellant
was charged with capital murder for murdering West in the course of committing
robbery.  The trial court’s charge allowed the jury to convict appellant if
they found he acted individually or was criminally responsible for the conduct
of another.  The jury convicted appellant, and the trial court imposed the
mandatory sentence of life imprisonment without possibility of parole.

Sufficiency of the Evidence

Appellant
contends the evidence is legally and factually insufficient to support his conviction.
 While this appeal was pending, five judges on the Texas Court of Criminal
Appeals held that there is one appellate standard of review for determining whether
the evidence is sufficient to support a criminal conviction beyond a reasonable
doubt: legal sufficiency.  See Brooks
v. State, --- S.W.3d ---, 2010 WL 3894613, at *1, *11 (Tex. Crim. App. Oct.
6, 2010) (plurality op.); id. at *22 (Cochran, J., concurring).  Accordingly,
we will apply the legal-sufficiency standard when addressing appellant’s
legal-sufficiency and factual-sufficiency arguments.  See Pomier v. State,
--- S.W.3d ----, No. 14-09-00247-CR, 2010 WL 4132209, at *2 (Tex. App.—Houston
[14th Dist.] Oct. 21, 2010, no pet. h.) (adopting the single standard of review
required by Brooks).

A.   Applicable Law
and Standard of Review 

A person commits murder if he intentionally or knowingly causes the death of another person or
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of another.  Tex. Penal Code Ann. § 19.02(b)(1),
(2) (West 2003).  A person commits capital murder if he intentionally or knowingly commits
murder in the course of committing or attempting to commit robbery.  Id.
§ 19.03(a)(2) (West Supp. 2009).  Under the law of parties, a defendant may be
charged with criminal responsibility for acts in which he may not have been the
principal actor.  Goff v. State, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996).
 Section 7.02 of the Texas Penal Code, entitled “Criminal Responsibility for
Conduct of Another,” provides with respect to law of the parties, in relevant
part:

(a) A person is criminally responsible for an offense
committed by the conduct of another if:

. . .

(2) acting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense[.]

Tex. Penal Code Ann. § 7.02(a)(2)
(West 2003).

Thus, to
prove party responsibility for an offense, the State must prove the accused
acted with the intent to promote or assist in the commission of the offense by
soliciting, encouraging, directing, aiding, or attempting to aid the other
person in its commission.  Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim.
App. 1988).  In determining whether the accused participated as a party, the jury
may consider “‘events occurring before, during and after the commission of the
offense and may rely on actions of the defendant which show an understanding
and common design to do the prohibited act.’”  Guevara v. State, 152 S.W.3d 45,
49 (Tex. Crim. App. 2004) (quoting Cordova v. State, 698 S.W.2d 107,
111 (Tex. Crim. App. 1985)).  Party status may be proved by circumstantial
evidence.  Id.  Mere presence at the scene of the offense does not
establish guilt as a party to the offense.  Porter v. State, 634 S.W.2d
846, 849 (Tex. Crim. App. 1982).  Presence at the scene, however, is a
circumstance tending to prove guilt which, when combined with other facts, may
suffice to show that the accused was a participant.  Valdez v. State,
623 S.W.2d 317, 321 (Tex. Crim. App. 1979).

When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether the jury was
rationally justified in finding guilt beyond a reasonable doubt.  Brooks,
2010 WL 3894613, at *5 (plurality opinion).  This court does not sit as a
thirteenth juror and may not substitute its judgment for that of the fact
finder by reevaluating the weight and credibility of the evidence.  Id.
at *10, 13; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999);
see also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)
(stating the jury may choose to believe or disbelieve any portion of the
testimony at trial).  Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish guilt. 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

B.   Analysis

            Viewing all
of the evidence in the light most favorable to the jury’s verdict, we conclude
that there is strong support for the verdict.

·       
Appellant called the taxi-cab company six times over an
hour-and-a-half period, requesting that a cab be sent for “Michael” at an
address other than his own.

·       
Photographs revealed that appellant, while still in the backseat,
reached over West, who apparently had been shot.  

·       
Although it was August in Houston, appellant and Esters wore
hooded sweatshirts.  They did not have the hoods around their heads when they
entered the cab, but photographs showed appellant was wearing his hood after he
had reached over West.  The fact that appellant did not take precautions to
conceal his identity until after West had been shot supports an inference he knew
West would be murdered.  See Hernandez v. State, 198 S.W.3d
257, 266 (Tex. App.—San Antonio 2006, pet. ref’d) (“[Defendant] also knew
that the men were going to commit their daytime raid on [murder victim’s]
residence without taking any precautions to conceal their identities from
[murder victim].”). 

·       
The center console and glove compartment in the cab had been
rummaged through, supporting an inference that appellant and Ester were looking
for valuables.  Appellant’s fingerprints were discovered on receipts found near
the cab and his palm-print was discovered on the trunk of the cab.

·       
The cab was found within a half-mile of appellant’s house.

·       
After the shooting, appellant discarded his sweatshirt into a
sewer.  An unidentifiable blood stain was located on the sweatshirt.  See
Guevara, 152 S.W.3d at 50 (“Attempts to conceal incriminating
evidence . . . [are] circumstances of guilt.”).  

·       
Appellant did not seek medical assistance for West following the
shooting.  Cf. Tezino v. State, 765 S.W.2d 482, 485 (Tex.
App.—Houston [1st Dist.] 1988, pet. ref’d) (“Failure to render aid known to be
needed supports an inference that injuries were intentionally, not
accidentally, inflicted.”).

·       
Appellant persistently lied during his police interview,
including telling detectives that he had not been in a cab that morning and
never called for a cab.  Further, when confronted with evidence contradicting
his statements, appellant fabricated new stories.  See Guevara, 152
S.W.3d at 50 (“[I]mplausible explanations to the police . . . [are]
circumstances of guilt.”); see also Hinojosa v. State, 4 S.W.3d 240,
253 (Tex. Crim. App. 1999) (describing defendant’s suspicious behavior
following murder as a circumstance of guilt).

These
circumstances support a logical conclusion that appellant was an active
participant in the robbery and murder of West, i.e., that he intended to and
did assist Esters in murdering West in the course of robbing him.[1] 
While some portions of the evidence are insufficient when viewed in isolation,
consistency of the evidence and reasonable inferences drawn from all the
evidence are sufficient to support the verdict. See Guevara, 152
S.W.3d at 52.  Accordingly, the evidence is legally sufficient to support beyond
a reasonable doubt the jury’s verdict that appellant committed capital murder. 
See Tex. Penal Code Ann. § 19.03(a)(2). 

We
overrule appellant’s challenge to the sufficiency of the evidence and affirm
the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Justices Anderson.
Frost, Seymore.

Do Not Publish — Tex. R. App. P.
47.2(b).









[1]
Appellant argues that a toy gun found in the seat pocket in front of where he
was sitting is evidence he did not actually intend for West to be killed. 
However, no evidence supports a finding that appellant owned or was aware of
the toy gun.