**Gabriel Casteneda MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–85–00393–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1986.

Rehearing Denied Feb. 5, 1987.

Don Killingsworth, San Antonio, for appellant.

Sam Millsap, Jr., Emil Holiner, Daniel Thornberry, Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

CADENA, Chief Justice.

A jury found appellant guilty of murder and assessed his punishment at 20 years' imprisonment. We affirm.

The indictment charged that appellant intentionally and knowingly caused the death of Faustino Salinas by beating him with his hands and kicking him with his feet. Appellant's first three points challenge the sufficiency of the evidence to establish his guilt beyond a reasonable doubt. These contentions are without merit.

The evidence may be fairly summarized as follows:

1. Faustino, who was confined to a wheel chair, lived in a room in back of a grocery store at 1117 Allende Street in San Antonio. A neighbor, Ramona Castillo, saw appellant enter this room at about 11:30 P.M. She called Faustino's aunt, Rosa Ortega, who lived in another room at 1118 Allende, and told her of appellant's actions. Ortega, soon after she received the call from Castillo, heard noises like someone being beaten coming from Faustino's room.

2. Antonio Ortega, Rosa's son and Faustino's cousin, testified that Salinas had a buzzer or alarm in his room which he used to summon members of his family to prepare him for bed. At about 11:00 P.M. Antonio heard the alarm and went to Faustino's room, only to discover that all of the doors to the room were locked, although Faustino invariably kept the doors unlocked. He knocked on the door and heard a noise like someone "being dragged." When he knocked a second time he heard sounds like "oh." When a third knock elicited no response, he tried another door to Faustino's room, but this door was also locked. He heard his mother say that someone was "beating" Faustino, and he then kicked in the door.

3. When Antonio kicked the door in he saw Faustino sprawled on the floor. The only other person in the room was appellant, who was standing next to the

sprawled body of Faustino. Antonio saw that appellant's foot was "against" Faustino's face, "like he had just finished kicking him." Antonio struck appellant and, with the aid of his son and one of his son's friends, Fernando Puente, dragged appellant from the room and called the police.

4. Anthony Ortega, Antonio's son, had spent part of the evening with Faustino, leaving Faustino's room at about 11:30 P.M. Fernando Puente left the room with Anthony, and at that time the doors to Faustino's room were open. When Anthony and Fernando returned about 30 minutes later, they heard Rosa Ortega screaming that someone had "done something" to Faustino. When they reached Faustino's room Anthony saw Faustino on the floor. He testified that Faustino was "just lying on the floor with his neck broken." Antonio was holding Faustino, and Anthony and Fernando struggled with appellant. Anthony and Fernando held appellant while Antonio went to call the police.

5. Fernando testified that Faustino's neck appeared to be broken. When Fernando and Anthony arrived at the scene Antonio said, "Look what [appellant] did to Faustino." Fernando remembers striking appellant with a glass and with his fists and helping Anthony restrain appellant while Antonio called the police.

6. When Antonio returned from calling the police, he picked Faustino off the floor and placed him in the wheel chair. At this time he discovered that Faustino's neck was broken.

7. Jose Jimenez testified that he and others were visiting Faustino when Anthony and Fernando left Faustino's room to visit some friends. When Jimenez left with the younger boys who had been visiting Faustino, Faustino was alive and unhurt.

8. According to the medical examiner, Faustino died of brain damage and a broken neck. These injuries resulted from his being struck by a blunt object, "like hands or feet," or an inanimate object like a bottle. Faustino also had seven broken ribs and lacerations and abrasions across his extremities, including his head and neck. The injuries could not be the result of falling out of a wheel chair. The fact that the bruising was on all sides of the body, both front and back, showed that Faustino had been "really jostled around."

9. Prior to the fatal incident, appellant had been drinking heavily since about 3:30 P.M., when he and a friend were doing some yard work at the home of friends. At one time, appellant wandered off and was brought back by friends who found him on Allende Street. He later wandered off again.

10. Appellant testified that he remembered doing yard work until about 7:00 P.M., but he subsequently "lost consciousness" and remembered nothing after losing consciousness. The next thing he remembered was waking up in the hospital, where the police had taken him for treatment for a concussion.

█ If the evidence is viewed in the light most favorable, it must be concluded that a rational trier of fact could have found, beyond a reasonable doubt, that appellant had intentionally or knowingly caused the death of Faustino by beating the victim with his fists and kicking him with his feet. Cf. Plunkett v. State, 580 S.W.2d 815 (Tex. Crim.App.1979) (on rehearing).

█ Appellant complains that, at the punishment phase of the trial, the court erred by not permitting him to present evidence of temporary insanity due to intoxication. When appellant's counsel asked him whether, "during the course of the commission of this crime," he knew that what he was doing was wrong, the prosecutor successfully objected. After the trial court had sustained the State's objection, similar questions were asked of appellant by his attorney without objection and appellant answered that at the time of the crime he was not aware that his actions were "bad." When he was asked whether he knew that his actions at the time were right or wrong he answered, "I don't know nothing at all of what happened." Since

similar questions were asked and answered without objection, the court's error in sustaining the State's objection, if any, was harmless. *See Williams v. State*, 566 S.W.2d 919 (Tex.Crim.App.1978).

The judgment of the trial court is affirmed.

BUTTS, Justice, concurring.

I concur in the result. The focus of the main insufficiency point is the variance between the allegation in the indictment of the manner and means of causing death and the proof of the means: "by beating the said complainant with his hands and kicking the said complainant with his feet ..."

The only proof offered as to cause of death was the testimony of the medical examiner, who stated there were other possible means in this case which may have caused death such as a bottle, or being struck against the floor. The only other relevant proof to sustain the allegation in the indictment was the statement by one of the persons who saw appellant with the deceased in the locked room: that appellant's foot was "against" the deceased's face. "Like he had just finished kicking him" is a conclusory statement, an opinion only.

It is well settled in Texas that the burden of proof in a criminal case is upon the State to prove every element of the offense beyond a reasonable doubt. Moreover, the burden is upon the State to prove the deceased was killed in the manner and means alleged in the indictment.

This is a circumstantial evidence case, and the specific allegation of the manner and means plays an important part in the circumstantial evidence presented. *See Jones v. State*, 132 Tex.Crim. 216, 104 S.W.2d 42 (1937).

The majority opinion addresses all three insufficiency questions as if they involve the same issues. I believe the issue of manner and means of causing death should be addressed separately. It is a "close question," not to be summarily treated.